IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

PAO TMK,

           Plaintiff,

    v.

UNITED STATES OF AMERICA,

           Defendant.

Court No. 21-00534

**COMPLAINT**

Plaintiff, PAO TMK ("TMK"), a member of the TMK group companies which produce and export certain seamless steel pipe, by and through its counsel, brings this action against the United States.  Plaintiff alleges and states as follows:

**<u>Introduction</u>**

1.      TMK is a leading global manufacturer and supplier of steel pipes for the oil and gas industry and for general use.  TMK is the parent and trading company of the TMK group companies.  TMK group companies operate around the globe through a number of subsidiaries and branches located in the Russian Federation ("Russia"), United States, and other countries in the European and Commonwealth of Independent States territories.  TMK group companies' production lines include drill pipe, oil country tubular goods, line pipe, boiler tube, mechanical pipe, and structural pipe made of carbon, alloy, and stainless steel.

2.      On July 8, 2020, Vallourec Star, LP ("Vallourec"), a U.S. subsidiary of the French multinational Vallourec S.A., filed a petition for the imposition of antidumping duties on imports of seamless carbon and alloy steel standard, line, and pressure pipe ("seamless pipe") from Russia, among other countries.  *See* Letter from Schagrin Associates to Sec'y of the U.S. Department of Commerce, *Petitions for the Imposition of Antidumping and Countervailing*

*Duties: Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from the Czech Republic, the Republic of Korea, Russia, and Ukraine*, Inv. No. A-821-826 (July 8, 2020) ("Petitions").

3.     Vallourec, the sole domestic producer to have filed the Petitions, also imports seamless pipe from several non-subject countries.

4.     The U.S. Department of Commerce ("Commerce") initiated the AD investigation on August 4, 2020.  *Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from the Czech Republic, the Republic of Korea, the Russian Federation, and Ukraine*, 85 Fed. Reg. 47,176 (Dep't Commerce Aug. 4, 2020) (initiation of less-than-fair-value investigations).

5.     Commerce issued initial and supplemental questionnaires to TMK between August 27, 2020, and January 19, 2021.

6.     Commerce issued its preliminary determination on February 10, 2021.  *See Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from the Russian Federation*, 86 Fed. Reg. 8,891 (Dep't Commerce February 10, 2021) (preliminary affirmative determination of sales at less than fair value), accompanied by Memorandum from Melissa Skinner, Senior Director, Office VII, Antidumping and Countervailing Duty Operations, to James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, *Decision Memorandum for the Preliminary Affirmative Determination in the Less-Than-Fair-Value Investigation of Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from the Russian Federation*, Inv. No. A-821-826 (February 3, 2021) ("Preliminary Decision Memorandum").

7.     In the Preliminary Decision Memorandum, Commerce applied adverse facts available ("AFA") to TMK because one of TMK's customers in Russia, which is affiliated with

TMK, did not provide its resale prices of TMK's products despite TMK's efforts. *See* Preliminary Decision Memorandum at 7-11. Nor is it known that TMK's original sales were ultimately resold during the period of investigation.

8.      Commerce issued questionnaire in lieu of verification on March 8, 2021.

9.      TMK provided its first response to the verification questionnaire on March 24, 2021, which was rejected by Commerce because Commerce did not accept certain minor corrections.

10.     TMK provided its second response on May 14, 2021, redacting information related to minor corrections pursuant to Commerce's instructions.

11.     TMK filed its case brief on May 21, 2021. And, Vallourec filed its rebuttal brief on May 28, 2021.

12.     Commerce issued its final determination on June 28, 2021, published on July 2, 2021. *See Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from the Russian Federation*, 86 Fed. Reg. 35,269 (Dep't Commerce July 2, 2021) (final affirmative antidumping duty determination) ("Final Determination"), and accompanying Memorandum from Melissa Skinner, Senior Director, Office VII, Antidumping and Countervailing Duty Operations, to James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, *Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from the Russian Federation*, Inv. No. A-821-826 (June 25, 2021) ("Final Decision Memorandum").

13.     In the Final Decision Memorandum, Commerce continued applying AFA to TMK, finding that it failed to cooperate although the non-cooperating company was TMK's minority-owned downstream customer.

14.     Commerce replaced all missing downstream sales prices with the highest price of products sold in the home market.  That price was of a product that does not have a comparison U.S. sale because it was not sold in the U.S. market.

15.     Commerce estimated an AD duty rate of 209.72 percent.

16.     On August 23, 2021, Commerce published the AD order on seamless pipe from Russia.  *See Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from the Republic of Korea and the Russian Federation*, 84 Fed. Reg. 47,060 (Dep't of Commerce August 23, 2021) (antidumping duty orders) ("*AD Order*").

<u>**Administrative Decision To Be Reviewed**</u>

17.     TMK brings this action to contest certain aspect of the final determination issued by Commerce in its AD investigation of *Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from Russia*, Inv. No. A-821-826.  The final determination was published as *Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from the Russian Federation*, 86 Fed. Reg. 35,269 (Dep't Commerce July 2, 2021) (final affirmative antidumping duty determination) ("Final Determination") and was accompanied by the Memorandum from Melissa Skinner, Senior Director, Office VII, Antidumping and Countervailing Duty Operations, to James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, *Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from the Russian Federation*, Inv. No. A-821-826 (June 25, 2021).

**Jurisdiction**

18.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), which confers "exclusive jurisdiction" to the Court over "any civil action commenced under section 516A {} of the Tariff Act of 1930," as amended (the "Act"), *i.e.*, 19 U.S.C. § 1516a. This action is commenced under 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (B)(i).

**Standing**

19.     TMK is an exporter and producer of seamless pipe from Russia.  TMK participated in the investigation that is the subject of this action through submission of questionnaire responses and arguments.  TMK is therefore an interested party and party to the proceeding within the meaning of Section 771(9)(A) of the Act, 19 U.S.C. § 1677(9)(A), and has standing to bring this action under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

**Timeliness**

20.     A plaintiff must commence an action under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (B)(i) "{w}ithin thirty days after – the date of publication in the Federal Register" of an AD order based upon final affirmative determination by Commerce under section 1671d.  This action is timely because it is commenced within thirty days of August 23, 2021, the date of publication of the *AD Order*, by filing the summons with the clerk of the court on September 21, 2021, followed by this complaint within 30 days of the filing of the summons.

**Background**

21.     Paragraphs 1 to 20 are incorporated herein by reference.

22.     On August 13, 2020, Commerce selected TMK and Volzhsky Pipe Plant Joint Stock Company ("Volzhsky") as mandatory respondents because they were the top two exporters

or producers by the volume of seamless pipe from Russia that entered for consumption into the United States during the period of investigation. *See* Memorandum from Melissa G. Skinner, Senior Director, Office VII, Antidumping and Countervailing Duty Operations, to James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, *Less-Than-Fair-Value Investigation of Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from Russia: Selection of Respondents for Individual Examination*, Inv. No. A-821-826 (Aug. 13, 2020).

23.     Volzhsky is part of TMK group companies.  Commerce collapsed TMK, Volzhsky, and several other companies as single entities for the purpose of the AD investigation. *See* Preliminary Decision Memorandum at 5-7.

24.     Commerce issued its initial and supplemental questionnaires to TMK between August 27, 2020, and December 7, 2020.

25.     In the initial questionnaire, Commerce requested that if more than five percent of total home market sales were made to an affiliated customer, TMK report home market sales to unaffiliated customer.  *See* Letter from Commerce to Crowell & Moring LLP, *Request for Information*, Inv. No. A-821-826 (Aug. 27, 2020) at B-4-B-5.

26.     In response, TMK reported that it did have a small share of home market sales to an affiliate but requested that TMK be excused from reporting resales because TMK neither controlled the affiliate nor had access to the resale invoice data.  *See* Letter from Crowell & Moring LLP to Sec'y of Commerce, *Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe ("SSLP Pipe") from Russia: TMK's Section B Questionnaire Response*, Inv. No. A-821-826 (Oct. 20, 2020) at 1.

27.     On October 26, 2020, Commerce issued supplemental questionnaire concerning Section B, home market sales, responses where it did not mention the issue of resales by the affiliate – neither granting TMK's request for excusal nor finding a deficiency in TMK's responses in that regard.  *See* Letter from Commerce to Crowell & Moring LLP, *Section B and C Supplemental Questionnaires in the Antidumping Duty Investigation of Seamless Pipe from Russia*, Inv. No. A-821-826 (Oct. 26, 2020).  TMK responded to the supplemental questionnaire on November 12, 2020.

28.     On November 19, 2020, Commerce issued second supplemental questionnaire concerning Section B responses.  This time, Commerce asked TMK to provide more details concerning TMK's ownership of the affiliate and requested to report downstream sales.  *See* Letter from Commerce to Crowell & Moring LLP, *Second Section B and C Supplemental Questionnaire in the Antidumping Duty Investigation of Aluminum Sheet from Taiwan* {sic}, Inv. No. A-821-826 (Nov. 19, 2020) at 6.

29.     On December 8, 2020, TMK responded to Commerce explaining that it made numerous attempts to obtain relevant information but was unable to compel the affiliate to cooperate fully.  TMK was able to obtain a small subset of sales information.  *See* Letter from Crowell & Moring LLP to Sec'y of Commerce, *Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe (''SSLP Pipe'') from Russia: TMK Response to Section B-C Second Supplemental Questionnaire (Except for Question 3)*, Inv. No. A-821-826 (Dec 8, 2020) at 7.

30.     In its response, TMK provided sample letters to the affiliate seeking the requested data.

31.     On February 4, 2021, Commerce issued its preliminary determination where it applied AFA to TMK because it "failed to provide requested information regarding downstream

sales" and "failed to cooperate by not acting to the best of its ability to comply with a request for information."

32.     As AFA, Commerce assigned the highest price of commonly sold products in the home market to all missing downstream sales.  Commerce preliminarily estimated a weighted-average dumping margin of 209.72 percent which did not change in the Final Determination.

33.     Although Commerce's adverse inferences were made with respect to the missing downstream sales only, dumping margins for about half of the U.S. sales are based on the adverse inference.

34.     The adverse inferences impacted the dumping calculations because the specific products sold in the United States did not have exact matches to any of the home market sales and the missing data would have been a closer match based on Commerce's model-matching method.  The missing price data, if they were indeed sold during the period of investigation, were replaced by a price of a different product not matching the U.S. sales.  Consequently, Commerce compared the U.S. sales to a home market price of a non-matching sale.  And, the AFA price was of a single sale – no other sales of that product were made either in the home market or United States.

35.     In the Final Determination, Commerce continued to find that TMK – and not the affiliate – failed to cooperate to the best of its ability.  Although Commerce acknowledged that minority share interest does not provide a legal basis to compel the affiliates cooperation, Commerce cited the Court's holding in *Nippon Steel & Sumitomo Metal Corporation v. United States*, Slip Op. 20-161 (Ct. Int'l Trade November 10, 2020) (*Nippon Steel*), for the proposition that affiliation is an indication of control which rendered TMK's efforts to obtain information inadequate.  *See* Final Decision Memorandum at 12-14.  Additionally, Commerce explained that

TMK's role as one of the largest exporters to the United States should have given it the market power to compel the affiliate reseller's cooperation.

36.     Concerning its AFA selection methodology, Commerce defended its choice by explaining that it is not required to consider the impact of the inference or the respondent's "commercial reality."  *Id.* at 16-17.

## STATEMENT OF CLAIMS

### Count One

37.     Paragraphs 1 to 36 are incorporated herein by reference.

38.     Commerce drew AFA against TMK directly and not TMK's affiliate.

39.     The "best of its ability" standard under 19 U.S. C. 1677e(b) requires that the lack of cooperation be in either (1) "failing to keep and maintain all required records," or (2) "failing to put forth maximum efforts to investigate and obtain the requested information from *its records*."  *See Nippon Steel Corporation v. United States*, 337 F.3d 1373, 1382-83 (Fed. Cir. 2003) (emphasis added).

40.     TMK did not possess those records but Commerce determined that minority affiliation and being top exporter was sufficient indicia of control (of those records) to warrant drawing adverse inferences directly against TMK.  *See*, *e.g.*, *Hyundai Steel Co. v. United States*, 319 F. Supp. 3d 1327, 1345 (Ct. Int'l Trade 2018).

41.     Affiliation and control are not used interchangeably in 19 U.S.C. § 1677e(33).

42.     In similar circumstances, this Court and the U.S. Court of Appeals for the Federal Circuit considered evidence in addition to mere affiliation to find indicia of control to draw adverse inferences for the non-cooperation of an affiliate.  *See*, *e.g.*, *Ta Chen Stainless Steel*

*Pipe, Inc. v. United States*, 298 F. 3d 1330 (Fed. Cir. 2002); *see also*, *Kawasaki Steel Corp v. United States*, 110 F. Supp. 2d 1029 (Ct. Int'l Trade 2000); *Hyundai Steel*, 319 F. Supp. 3d 1327.

43.     Commerce's finding that being top exporter provides TMK control over a domestic reseller is not supported by substantial evidence.

44.     Commerce's finding that affiliation alone is sufficient indicia of control to warrant application of AFA is not supported by substantial evidence and is otherwise not in accordance with law.

<u>**Count Two**</u>

45.     Paragraphs 1 to 44 are incorporated herein by reference.

46.     In application of AFA, Commerce is bound not to "overreach reality in seeking to maximize deterrence" or utilize information that is "punitive, aberrational, or uncorroborated." *BMW of North America LLC v. United States*, 926 F.3d 1291, 1301 (Fed. Circuit 2019). "{C}ommon sense dictates, that Commerce should consider the overall facts and circumstances of each case, including the level of culpability of the non-cooperating party in an AFA analysis." *Id.*

47.     Commerce estimated a weighted-average dumping margin of 209.72 percent. That estimation is unreasonable and punitive because it is based on a price of a single sale that is unrepresentative of the home market sales.  Additionally, that sale has no matching product in the in the U.S. sales database for comparison.  However, that price of a single sale became the comparison price for nearly half of TMK's U.S. sale control numbers and more than half of products sold in the U.S. market in terms of quantity.

48.     Commerce failed to consider the degree of control TMK had over the uncooperative affiliate to ensure that the adverse inferences serve as a deterrence and not as a

punishment.  See *Mueller Comercial de Mexico S. de R.L. de C.V. v. United States*, 753 F.3d 1227, 1235 (Fed. Cir. 2014) ("{I}f the cooperating entity has no control over the non-cooperating suppliers, a resulting adverse inference is potentially unfair to the cooperating party.").

49.    Thus, Commerce's estimation of a weighted-average dumping margin of 209.72 percent is not supported by substantial evidence and otherwise not in accordance with law.

## PRAYER FOR RELIEF

WHEREFORE, TMK respectfully requests that this Court:

1. Hold that the Final Determination is unsupported by substantial evidence and not in accordance with law.

2. Remand the Final Determination to Commerce with instructions to issue a new determination consistent with the Court's opinion.

3. Provide such other relief as this Court may deem just and proper.

Respectfully submitted,

Dated:  October 21, 2021

Daniel Cannistra
John Anwesen

CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
Tel: 202.624.2902
E-mail: DCannistra@crowell.com